UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,　　　　　　　　Court File No. 15-cr-154 (DWF/LIB) (1)

　　　　　Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　**REPORT AND RECOMMENDATION**

William Andrew Clark,

　　　　　Defendant.

　　　　　This matter comes before the undersigned United States Magistrate Judge upon Defendant William Andrew Clark's ("Defendant") Motion to Suppress Statements, [Docket No. 23]. This case has been referred to the undersigned Magistrate Judge for a report and recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1. The Court held a motions hearing on July 7, 2015, regarding Defendant's Motion to Suppress Statements, [Docket No. 23]. The parties declined the opportunity for supplemental briefing and the motion was taken under advisement on July 7, 2015.

　　　　　For reasons discussed herein, the Court recommends that Defendant's Motion to Suppress Statements, [Docket No. 23], be **DENIED**.

I.　**BACKGROUND AND STATEMENT OF FACTS**

　A. **Background**

　　　　　On May 12, 2015, Defendant was charged with one count of aggravated sexual abuse, in violation of 18 U.S.C. §§ 1151, 1153(a), 2241(a)(1), and 2246(2)(A); and one count of sexual abuse, in violation of 18 U.S.C. §§ 1151, 1153(a), 2242(2)(B), and 2246(2)(A). (Indictment [Docket No. 1]).

B.  Facts[1]

On May 18, 2015, Federal Bureau of Investigation Special Agent Jonathan Tjernagel ("SA Tjernagel") met with, interviewed, and then ultimately arrested Defendant at the Red Lake Tribal Criminal Justice Complex ("the Complex").

Defendant had come to the Complex to meet with the registered sex offender compliance officer. As Defendant was leaving that meeting, SA Tjernagel approached Defendant in the lobby and asked to talk with him. At that time, SA Tjernagel had in his possession a federal warrant for Defendant's arrest, but SA Tjernagel did not reveal that information to Defendant when asking Defendant to speak with him. SA Tjernagel was dressed in pants, a polo shirt, and a vest. SA Tjernagel was armed, but his weapon was not visible. Defendant agreed to speak with SA Tjernagel.

To SA Tjernagel, Defendant appeared to have a slight limp but otherwise appeared to be physically sound. Because Defendant appeared to be limping, SA Tjernagel asked Defendant if he would like to have a seat on the one of the benches in the Complex's lobby during the interview.  Defendant agreed and the two moved to a bench in the lobby for their conversation.

The Complex is a multi-use facility. In addition to being the headquarters for the Red Lake Police Department, the Complex houses the Tribal Court, the Tribal Court Clerk, the Red Lake Detention Center, the Red Lake Tribal Defenders Office, and the offices of the Red Lake Registered Sex Offender Compliance Officer.  The lobby of the Complex is a public area, with three sets of double doors leading from the lobby to the Red Lake Detention Center, the Tribal Court, and the Red Lake Police Department, respectively.

---

[1] Except where expressly indicated otherwise, the facts are derived from the testimony of Special Agent Jonathan Tjernagel at the July 7, 2015, motions hearing.

SA Tjernagel's conversation with Defendant, which SA Tjernagel recorded, was polite. SA Tjernagel did not make any threats or promises to Defendant. SA Tjernagel did not at any time before or during the conversation touch Defendant, give Defendant any orders, or restrict Defendant's movement. To SA Tjernagel, Defendant appeared to understand the questions SA Tjernagel was asking. Defendant also appeared to be sober and to be otherwise mentally sound. SA Tjernagel was aware that Defendant, who was at the time sixty-six (66) years of age, had multiple previous contacts with the criminal justice system, including ones resulting in previous state and federal convictions. SA Tjernagel did not read Defendant the Miranda warnings prior to or during the interview as he did not consider Defendant to then be in custody. The interview lasted approximately three minutes and twenty seconds. (See Gov't Ex. 1).

At the end of the interview, SA Tjernagel turned the recorder off and placed it in his pocket, as he wanted his hands free when he informed Defendant that he had a federal warrant to arrest Defendant. SA Tjernagel then arrested Defendant.

On June 26, 2015, Defendant filed the present Motion to Suppress Statements, [Docket No. 23].

## II. DEFENDANT'S MOTION TO SUPPRESS STATEMENTS [DOCKET NO. 23].

Defendant moves the Court for an order suppressing all statements he made on May 18, 2015. (See Def.'s Motion to Suppress Statements, [Docket No. 23]).

As initially drafted, Defendant's motion sought to suppress statements Defendant made both before and after SA Tjernagel arrested him. (See Id.). In its Response to the Motion to Suppress Statements, [Docket No. 25], the Government represented that Defendant had not made any statements to law enforcement after his arrest. (Gov't's Response to Def.'s Motion, [Docket No. 25], 1). No evidence was presented at the motion hearing indicating that Defendant made

3

any statements after being arrested. Accordingly, to the extent that Defendant's Motion to Suppress Statements, [Docket No. 25], was directed at statements Defendant made after he was arrested by SA Tjernagel, the Court recommends **DENYING** Defendant's Motion to Suppress Statements, [Docket No. 25], as moot.

Defendant also seeks to suppress the statements he made prior to being arrested by SA Tjernagel. In his motion papers, Defendant generically asserted that any statements he made were the product of custodial interrogation and were given without being first warned of his Miranda rights and, in any event, were not given voluntarily.

### A. Standard of Review

"[Miranda] prohibits the government from introducing into evidence statements made by the defendant during a custodial interrogation unless the defendant has been previously advised of his [F]ifth [A]mendment privilege against self-incrimination and right to an attorney." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005) (citing Miranda v. Arizona, 384 U.S. 436, 444 (1966)). Accordingly, Miranda warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way[.]" Stansbury v. California, 511 U.S. 318, 322 (1994) (quoting Miranda, 384 U.S. at 444).

Statements that are the product of a non-custodial interrogation may also be suppressed if the statements are not made voluntarily. See United States v. Brave Heart, 397 F.3d 1035, 1040 (8th Cir. 2005) (considering the voluntary nature of a statement that was the product of non-custodial questioning). "In considering whether a confession was voluntary, the determinative question is whether the confession was extracted by threats, violence, or promises (express or implied), such that the defendant's will was overborne and his or her capacity for self-

determination was critically impaired." United States v. Pierce, 152 F.3d 808, 812 (8th Cir. 1998).

**B. Analysis**

1. Non-Custodial Interrogation

Defendant contends that the Court must suppress the statements he made during the interview because SA Tjernagel did not read him the Miranda warnings. Miranda warnings are required for official interrogations where a person has been "taken into custody or otherwise deprived of his freedom of action in any significant way[.]" Stansbury, 511 U.S. at 322 (quoting Miranda, 384 U.S. at 444). It is undisputed that SA Tjernagel did not read Defendant the Miranda warnings and that his interview of Defendant constituted interrogation or its functional equivalent. Accordingly, the key issue is whether Defendant was in custody for the purposes of Miranda when he was interviewed by SA Tjernagel. See United States v. Axsom, 289 F.3d 496, 500 (8th Cir. 2002) ("The undisputed facts establish that [the officer was] interrogating [the defendant]. To determine whether the Miranda rule applies, we must examine whether [the] interrogation was custodial.").

> The Eighth Circuit has explained:
>
> [W]e outlined six common indicia of custody which tend either to mitigate or aggravate the atmosphere of custodial interrogation. The indicia are: (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.
>
> The first three indicia are mitigating factors which, if present, mitigate against the existence of custody at the time of questioning. Conversely, the last three indicia

are aggravating factors which, if present, aggravate the existence of custody. We have emphasized these six indicia of custody are representative and are not exclusive. A finding of custody does not require the factual circumstances of a case to present all indicia; and a particularly strong showing of one factor may compensate for a lesser or non-existent showing of another factor.

Id., at 500-01 (internal citations omitted). "These factors, however, are not exclusive, and custody cannot be resolved merely be counting up the number of factors on each side of the balance and rendering a decision accordingly." United States v. Flores-Sandoval, 474 F.3d 1142, 1147 (8th Cir. 2007) (internal citation and quotations marks omitted). "The analysis depends upon a review of the totality of the circumstances, and [t]he ultimate test is whether a reasonable person in that position would have felt free to end the interview." United States v. Sanchez, 676 F.3d at 630–31 (8th Cir. 2012) (internal citation and quotation marks omitted, alteration in Sanchez).

When beginning his interview, SA Tjernagel did not tell Defendant that he was not under arrest. However, near the end of the three-and-a-half minute interview, SA Tjernagel told Defendant that he did not have to answer questions if he did not want to do so. (Gov't Exhibit 1 at 2:45). See United States v. Jones, 630 F.2d 613, 616 (8th Cir. 1980) (finding that a defendant being informed that she did not need to answer questions indicated that the questioning was non-custodial). Accordingly, the first factor does not mitigate heavily either way for or against a finding that Defendant was in custody.

The record presently before the Court is silent regarding whether Defendant attempted to move about during the interview and whether Defendant was aware SA Tjernagel would have attempted to restrict any such movement.[2] Accordingly, the second mitigating factor likewise

---

[2] However, the Court notes that SA Tjernagel was already in possession of a federal arrest warrant for Defendant at the time he initiated contact with Defendant, and therefore, it is reasonable to infer that had Defendant sought to leave the Complex, SA Tjernagel would have prevented him from doing so. However, Defendant at the time of the interview was unaware of the existence of the federal arrest warrant or of SA Tjernagel's unspoken likely intent to

6

does not weigh for or against a finding that Defendant was in custody. States v. Ollie, 442 F.3d 1135, 1138 (8th Cir. 2006) ("The record is silent on this issue because Mr. Ollie never tried to move about or leave the interview room. Because the record is thin, we believe that it is impossible to determine if Mr. Ollie retained his freedom of movement throughout the questioning.").

The third factor, which addresses whether Defendant initiated contact with the police or voluntarily acquiesced to police questioning, mitigates in favor of finding that Defendant was not in custody. See Axsom, 289 F.3d at 501 (concluding that the third factor mitigated a finding that the defendant had been in custody where he voluntarily acquiesced to police questioning even though he didn't initiate contact with the police).

The fourth factor, which addresses whether law enforcement used coercive tactics against a suspect, is not present here. There is nothing in the record to indicate that SA Tjernagel threatened or made promises to Defendant or used any other coercive methods to overbear Defendant's free will when interviewing him.

The fifth factor addresses whether the questioning took place in a "police dominated atmosphere." In considering this factor, a court looks at the length and location of the interview. The interview here was short, lasting only slightly longer than three minutes. While the interview took place at the Red Lake Tribal Criminal Justice Complex, it is a multi-use facility that houses

---

execute the warrant, and therefore, the mere fact of the existence of the federal arrest warrant, under the circumstances of the present case, would not have been an influencing factor in whether or not a reasonable person would have felt they were in custody during the interview. See Berkemer v. McCarty, 468 U.S. 420, 442 (1984) ("A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation."); see also United States v. Corum, No. CR. 01-236(JRTFLN), 2002 WL 1285078, at *6 (D. Minn. June 5, 2002) (holding that, because interviewing officers did not inform the defendant that they were already in possession of an arrest warrant and planned to arrest him at the end of the interview, neither the officers' possession of the arrest warrant nor their unarticulated plan to arrest the defendant after the interview rendered the defendant in custody for the purposes of Miranda).

the Red Lake Police Department, along with the offices and facilities of other tribal agencies—including the Red Lake Tribal Defenders Office. Thus, although there was a police presence in the Complex, the Court finds that the atmosphere in the public lobby in which the interview took place was not "police dominated." See United States v. Lindgren, 857 F. Supp. 2d 806, 814 (N.D. Iowa 2011) (concluding that interview conducted at a city hall where the local police department conducted its business was not in a "police dominated" atmosphere). Accordingly, this factor weighs at most only slightly, if at all, in favor of a finding that Defendant was in custody.

The sixth factor, which addresses whether Defendant was arrested at the end of the interview, does not in this case aggravate in favor of finding that Defendant was in custody as SA Tjernagel did not communicate to Defendant that he had a warrant for Defendant's arrest until after the interview ended. Both the Supreme Court and the Eighth Circuit have held that "[a] policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984); United States v. Griffin, 922 F.2d 1343, 1356 (8th Cir. 1990) (quoting Berkemer, 468 U.S. at 442). Based on a review of the present totality of the circumstances, the Court concludes that a reasonable person in Defendant's position at the time of the interview would have felt free to terminate the interview, and as such, Defendant was not in custody for the purposes of Miranda.

2. Voluntariness.

Defendant next contends that his statements during the interview were, in any event, not made voluntarily. The Court finds no merit to Defendant's argument that his statements were not made voluntarily. "In considering whether a [statement] was voluntary, the determinative

8

question is whether [it] was extracted by threats, violence, or promises (express or implied), such that the defendant's will was overborne and his or her capacity for self-determination was critically impaired." Pierce, 152 F.3d at 812. There is nothing in the record presently before the Court to indicate that Defendant's capacity for self-determination was at all impaired. More importantly, the Court has already found that there is nothing in the present record to indicate that SA Tjernagel employed any coercive methods whatsoever. As such, the Court cannot conclude that Defendant's statements were made involuntarily. See Colorado v. Connelly, 479 U.S. 157, 167 (1986) ("We hold that coercive police activity is a necessary predicate to . . . finding that a confession is not voluntary[.]").

Based on the foregoing, the Court recommends **DENYING** Defendant's Motion to Suppress Statements, [Docket No. 23], to the extent the motion pertains to any statement Defendant made before being arrested.

## IV. CONCLUSION

Based on the foregoing and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Motion to Suppress Statements, [Docket No. 23], be **DENIED**.


Dated: July 13, 2015                                                  s/Leo I. Brisbois
                                                                               Leo I. Brisbois
                                                                               U.S. MAGISTRATE JUDGE


**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served

with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.